# IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| ROBERT K. BALLARD,<br><br>Plaintiff,<br><br>vs.<br><br>U.S. SECRETARY OF THE NAVY, RAY MABUS, in his official capacity,<br><br>Defendant. | CIVIL CASE NO. 13-00024<br><br>**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT RAY MABUS' MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

Plaintiff Robert K. Ballard alleges that his former employer, the U.S. Navy, subjected him to a hostile work environment based on sex, age, and race, and then terminated him in retaliation for bringing the abuse to the attention of his superiors, all in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967 ("ADEA"). (Compl., ECF No. 1.) In the present motion, Defendant Ray Mabus, sued in his official capacity as the Secretary of the Navy, seeks summary judgment on all claims in the complaint. (Mot. Summ. J., ECF No. 27.) The Navy argues that it had legitimate reasons to fire Ballard, who was a recently hired probationary federal civilian employee. Ballard counters that the Navy's asserted reasons are mere pretext, and that he was in fact fired for reporting the abuse. (Opp'n, ECF No. 31.) With respect to the hostile work environment claims, because the undisputed facts demonstrate that the Navy took adequate remedial measures to stop any harassment, the Court

1

will grant summary judgment in favor of Defendant on those issues. However, with respect to retaliation, because many material facts remain in dispute, and the undisputed facts do not justify judgment as a matter of law, the Court will deny Defendant's motion for summary judgment on that issue.

## II. BACKGROUND

Ballard worked as an electronics technician at the Naval Computer and Telecommunications Station ("NCTS") on Guam from October 3, 2011, to February 16, 2012. (Mot. Summ. J., Ex. B, "Notification of Personnel Action," ECF No. 27-2; Mot. Summ. J., Ex. A, "Notice of Termination," ECF No. 27-1.) At first, he was assigned to the High Frequency work center, where he was trained in part by Jose Leon Guerrero. (Def. Concise Statement, Ex. L, "Report of Investigation," ECF No. 28-2.) Both men reported to Rodney Rood and Mitchell Maness. (Mot. Summ. J., Ex. I, "Frey Report" 101, ECF No. 27-9.)

On January 26, 2012, Ballard told Rood and Maness that Leon Guerrero had pressed his erect penis to Ballard's back. (*Id.* at 102.) He further alleged that on other occasions, Leon Guerrero had rubbed his stomach on Ballard. (*Id.*) Rood and Maness met with Leon Guerrero, who denied Ballard's allegations and told them that Ballard had been sleeping on the job. Leon Guerrero was sent home for the day, and Maness reported the allegations to Lieutenant Commander Randall Fuller, who was the Executive Officer of NCTS Guam at that time. Fuller in turn reported Ballard's allegations to Captain Vincent Augelli, who appointed Lieutenant Commander James Frey to investigate. (*See* Frey Report.)

After reporting the alleged incident, Ballard was transferred from the High Frequency work center to the SATCOM Building; Leon Guerrero returned to his normal work assignment. (Pl. Concise Statement, Ex. 2, Leon Guerrero Depo. 117:4–23, ECF No. 32-2.) Ballard claims that SATCOM offered no improvement over the High Frequency work center because he was

2

unfamiliar with the job requirements at SATCOM and received no instruction or work tasks. (Pl. Concise Statement, Ex. 2, Ballard Depo. 272:17–22, ECF No. 32-1.) He also alleges that a friend of Leon Guerrero, Vince Rosario, who worked at SATCOM, began harassing Ballard about his age and race. (Report of Investigation 3.) In particular, after Ballard told Rosario that a little old lady had previously owned Ballard's car, Rosario quipped that now a little old man owned it. (*Id.*) Ballard alleges that Rosario also complained about Ballard taking a job from a Guamanian, although Rosario denies using that term. (*Id.*) Ballard complained about Rosario's comments to his supervisor, and Rosario was told to leave Ballard alone and behave professionally. (Mot. Summ. J., Ex. C, Rosario Depo. 71:10–24.) Ballard does not allege any further comments or problems with Rosario.

The details of Frey's investigation are highly disputed. Over the course of several interviews, Frey alleges that Ballard offered confused accounts of what had occurred with Leon Guerrero, and eventually admitted that nothing had happened. (Frey Report 101–102.) Frey concluded that Ballard disliked Leon Guerrero and attempted to get reassigned to a different shift so that the two men could avoid each other. (*Id.* at 101.) When pushed as to why he wanted to be reassigned by Rood, Ballard concocted the sexual harassment story. (Def. Erratum, Ex. H, "Frey EEO Interview Notes" 52, ECF No. 29-2.)

However, according to Ballard, Frey rejected any claim of sexual assault against Leon Guerrero. (Ballard Depo. 163:4–164:18, ECF No. 32-1.) Ballard asserts that, for an early interview, he prepared a statement describing his allegations against Leon Guerrero, including the allegations that Leon Guerrero rubbed his genitals on Ballard. (Pl. Statement of Facts, Ex. 4, "First Ballard Statement," ECF No. 32-4.) Frey warned him that the allegations would not be accepted by the chain of command, and advised Ballard to change his position. (Ballard Depo. 168:2–21, ECF No. 32-1.) Frey also allegedly told Ballard that if he changed his story, Ballard

3

could keep his job. (*Id.* at 170:19–171:23.) Accordingly, Ballard prepared a new statement in keeping with Frey's wishes: "After reflecting the past few days, I have came [sic] to the conclusion that I was not sexual [sic] harassed and was merely being bullied by Mr. Leon Gurrero [sic]." (Pl. Statement of Facts, Ex. 5, "Second Ballard Statement," ECF No. 32-5.)

On February 16, 2012, Fuller formally terminated Ballard. The Navy provided four reasons for firing him: (1) unsatisfactory work quality; (2) inability to follow office procedures; (3) inability to work with others; and (4) sleeping on duty on numerous occasions, including January 25, 2012. (Notice of Termination.) Ballard alleges that he was never made aware of any of the problems with his employment prior to losing his job.

Ballard filed an Equal Employment Opportunity complaint on April 17, 2012. He was informed that he could initiate a lawsuit on September 11, 2013, and filed suit in this Court on December 9, 2013.

### III. DISCUSSION

Ballard argues that he was subjected to a hostile work environment based on sexual harassment from Leon Guerrero, a hostile work environment based on age and race harassment from Rosario, and unlawful retaliation for reporting the abuse based on his being transferred to SATCOM and then being terminated. The Navy counters that Ballard was fired for non-discriminatory reasons, and argues that Ballard cannot rebut those reasons. Ballard, naturally, disagrees.

*A. Hostile Work Environment*

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Of course, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold,*

4

*Inc.*, 369 U.S. 654, 655 (1962) (per curiam); *see Lam v. Univ. of Hawaii*, 40 F.3d 1551, 1555 n.2 (9th Cir. 1994). In employment discrimination cases, summary judgment is especially fraught, "since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses." *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004).

Title VII of the Civil Rights Act of 1964 makes it an unlawful employment practice for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Similarly, the ADEA makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Employers may be held liable under Title VII or ADEA for creating or tolerating a discriminatory hostile work environment when the environment is both objectively and subjectively unreasonable such that it alters the conditions of the victim's employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 786-87 (1998). An employer's vicarious liability depends on the status of the harassing party as a co-worker or supervisor: "[i]f the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions." *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (2013) (holding that an employee is a supervisor if he can "take tangible employment actions against the victim"). In other words, an employer may be held liable "if the employer knew or reasonably should have known about the harassment but failed to take remedial action." *Id.* at 2441.

Here, Ballard argues that each of his positions at NCTS Guam was marred by a hostile work environment: the High Frequency work center by Leon Guerrero's alleged sexual

5

harassment and SATCOM by Rosario's alleged age and race harassment. However, even if Ballard's allegations are true and that they establish a prima facie case of hostile work environments in violation of Title VII and ADEA, he nevertheless cannot prevail as a matter of law because the Navy took immediate remedial measures. The day Ballard accused Leon Guerrero of sexual harassment, the Navy separated the two men and initiated an investigation. Similarly, Ballard's complaints against Rosario were immediately addressed when Rosario's management instructed him to leave Ballard alone and behave professionally. The record does not reveal any harassment subsequent to the Navy's swift actions. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759 (1998) ("An employer is negligent with respect to sexual harassment if it knew or should have known about the conduct and failed to stop it.").

Additionally, to the extent that Ballard alleges supervisor liability against Leon Guerrero, because nothing in the record shows that Leon Guerrero had any authority to "take tangible employment actions against" Ballard, Leon Guerrero was not a supervisor, and the supervisor liability claim must fail. *See Vance*, 133 S. Ct. at 2439.

### B. Retaliation

It is unlawful for an employer to discriminate against an employee for opposing unlawful discrimination. 42 U.S.C. § 2000e-3(a); *see Gomez-Perez v. Potter*, 553 U.S. 474, 479 (2008) (ADEA protects federal employees from "retaliation based on the filing of an age discrimination complaint"). There are three parts to a prima facie case of unlawful retaliation: (1) plaintiff acted to protect his Title VII rights; (2) an adverse employment action was then taken against him; and (3) there was a causal link between the two events. *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1465 (9th Cir. 1994). If the plaintiff succeeds in establishing her prima facie case, "the burden then shifts to the employer to proffer an alternative explanation for its action, which the employee may attempt to rebut." *McGinest*, 360 F.3d at 1124; *see McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792, 802-05 (1973) (creating the burden shifting paradigm for employment discrimination cases on summary judgment).

Here, Ballard established a prima facie retaliation claim: his complaints all revolved around either Title VII or ADEA protections; he was transferred to an area outside his training and subsequently fired; and the entire procedure took less than a month. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam) (noting that temporal proximity may suffice to show causality if the complaint and the adverse action are "very close" in time).

The Navy argues that the four reasons it gave for dismissing Ballard show that its act was lawful. The Navy is correct that it may terminate employees, particularly probationary employees like Ballard, for: (1) poor work quality; (2) failing to follow office procedures; (3) working poorly with co-workers; and (4) sleeping on duty. And indeed, all four reasons find some support in the deposition testimony of Ballard's coworkers and supervisors.

However, the Navy's presentation of lawful reasons for its adverse employment action against Ballard does not end the inquiry. Rather, Ballard may present direct or circumstantial evidence suggesting that the Navy's adverse actions were due in whole or in part to an unlawful motive. *See McGinest*, 360 F.3d at 1123. Here, Ballard presents several reasons to doubt the Navy's candor. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) ("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive."). To rebut the Navy's assertion that Ballard's work performance was deficient, Ballard contends that the Navy never gave him notice of the deficiency until the day he was fired. Furthermore, he reasons that if his work was unsatisfactory, the Navy would not have allowed him to work alone during night shifts two days a week. Indeed, according to Frey's report, both of Ballard's supervisors "report[ed] that Mr. Ballard's poor performance was

7

isolated to his 'first month or so' and after November 'everything was fine.'" (Frey Report at 104.)

With respect to the Navy's claim that Ballard violated unspecified procedures, he argues that he was not aware of breaking any office procedures, and that no supervisor ever advised him of the procedures he was allegedly failing to follow. Ballard similarly denies having difficulty with any of his coworkers other than Leon Guerrero and Rosario. Obviously, if Ballard's allegations are true, then he had every reason not to get along with the men—they were unlawfully harassing him. Finally, Ballard flatly denies ever sleeping on the job. Indeed, the sleeping accusation came to light only after Ballard complained about Leon Guerrero's alleged sexual harassment.

Ballard also disputes the factual conclusions of Frey's investigation, which found that Ballard had made up the sexual harassment allegation against Leon Guerrero to get a different work assignment. Ballard reasons that Frey essentially bullied him into changing his story to satisfy the chain of command. In support of that argument, which Frey denies, Ballard compares his first written statement—stating that Leon Guerrero placed his genitals on Ballard—to his second written statement—which sought to drop all allegations.

The contrasting stories and evidence in this case create the classic foil to summary judgment. Determining the winner will depend on weighing all the evidence, including the credibility of the witnesses. The parties need a fact-finder before any decision about the applicability of the law can be made. Ballard's contentions create material issues of fact for a jury, and thus summary judgment must be denied. *See McGinest*, 360 F.3d at 1124 (noting that "close cases" on summary judgment must be resolved in favor of the plaintiff).

The Navy places great stock in the fact that Ballard was a probationary employee who was not entitled to the more rigorous administrative protections afforded to permanent federal

employees. *See* 5 C.F.R. §§ 315.803–315.804 (instructing federal agencies to use the probationary period to evaluate the fitness of new federal employees and terminate employees who fail to demonstrate qualifications). That argument completely misses the point. Ballard does not argue that his due process rights were violated. *Cf. Board of Regents v. Roth*, 408 U.S. 564, 569 (1972) (holding that a non-tenured college professor did not have a constitutional due process right to a statement of reasons for the University's decision not to renew his contract). Rather, he argues that he suffered discrimination and that he was fired in retaliation for reporting it. *See Brown v. General Servs. Admin.*, 425 U.S. 820, 825-26 (1976) (noting that Title VII did not protect federal employees until Congress passed the Equal Employment Opportunity Act of 1972). Nothing in the statutes or regulations governing probationary federal employees waives the protections of federal antidiscrimination laws—they are silent on the issue. *See* 5 U.S.C. §§ 7511–7513; 5 C.F.R. §§ 315.803–804.

The antidiscrimination protections afforded to probationary federal employees can be analogized to private sector at-will employees. *See Brown*, 425 U.S. at 836 ("Congress intended federal employees to have the same rights available to remedy racial discrimination as employees in the private sector."). Much like their federal probationary counterparts, employers of at-will employees may terminate employment for any reason—or even for no reason at all. *See, e.g., Henderson v. Bonaventura*, 994 F. Supp. 2d 1106, 1113 (D. Nev. 2014) (applying Nevada law and noting that at-will employment can be terminated by either employer or employee for "any reason or no reason"). But that latitude in firing employees does not in any way reduce the bite of antidiscrimination laws. *See* 42 U.S.C. § 2000e(b), (f) (defining "employer" and "employee" without regard to at-will employment or procedural protections due to either party before employment may be terminated). An employee fired for reporting sexual harassment is entitled to the protection of Title VII whether she is a private employee, a

9

permanent federal employee, or a probationary federal employee—or anyone in between. *See Brown*, 425 U.S. at 836. The Navy's arguments simply miss the mark.

Finally, the Navy relies on *Garcia-Cabrera v. Cohen* for the proposition that there can be no Title VII or ADEA employer liability if the supervisor who terminated the plaintiff-employee was misled into the termination by the lies of the plaintiff's co-workers. 81 F. Supp. 2d 1272, 1283 (M.D. Ala. 2000) (citing *Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (assuming for the sake of argument that the employees complaining of plaintiff "were lying through their teeth" but focusing only on whether management actually believed the lies to assign liability)). Essentially, the Navy argues that even if everything Ballard asserts is true, because Ballard's superiors did not believe him, their decision to terminate him cannot be pretext, even if built upon nothing but lies. There is some support for that position in the Ninth Circuit. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) ("courts only require that an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless" (internal quotation marks omitted)). But in this case, Ballard proffered evidence that his supervisors did not honestly believe their stated reasons for terminating him. *See Lamont v. Anning-Johnson Co.*, No. 09-CV-1391-PK, 2011 WL 2200680, at *6 (D. Or. June 6, 2011) (distinguishing *Villiarimo* based on the paucity of evidence produced by the plaintiff in that case to support a prima facie case or undermine the legitimacy of the employer's reasons for taking adverse actions against the plaintiff); *Elrod*, 939 F.2d at 1470 (noting that an employer may escape liability if the court determines that it believed in good faith that an employee's performance was unsatisfactory). Frey's report states that Ballard's supervisors actually thought he was doing a good job after a rocky first month. It strains credulity to think that the Navy could terminate Ballard in good faith for unsatisfactory work performance when his direct managers admitted that "everything was fine" with his performance

immediately before he was fired. For the reasons stated above, Ballard has met his burden of showing the potential of a retaliatory motive for his termination.

### IV. CONCLUSION

The undisputed facts relevant to Ballard's hostile work environment claims show that the Navy took immediate measures to remedy the harassment he alleged as soon as it became aware of it. Accordingly, Defendant is entitled to judgment as a matter of law with respect to Ballard's hostile work environment claims. However, many material facts relating to Ballard's retaliation claims remain in dispute, such that neither party is entitled to judgment as a matter of law. Therefore, Defendant's motion for summary judgment must fail on those claims.

It is hereby ORDERED that, consistent with this opinion, Defendant's motion for summary judgment is granted in part and denied in part.

**SO ORDERED.**



**/s/ Frances M. Tydingco-Gatewood**
   **Chief Judge**
**Dated: Mar 25, 2016**